IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANET A. PEARSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.: 09-cv-506-DRH-DGW |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**REPORT AND RECOMMENDATION**

**Wilkerson, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Chief Judge David R. Herndon pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Review of the Commissioner's Decision Denying Benefits filed on July 13, 2009 by Janet Pearson ("Claimant") (Doc. 2). For the reasons discussed below, the undersigned recommends that the Court **REMAND** this case to the Commissioner for further proceedings consistent with this opinion.

**FINDINGS OF FACT**

*Procedural History*

Claimant applied for disability insurance benefits and supplemental security income on June 12, 2006 (Tr. 38). The Commissioner denied the claim initially on September 15, 2006 (Tr. 40), and upon reconsideration on November 17, 2006 (Tr. 49). Claimant filed a timely written request for a hearing before an administrative law judge ("ALJ") on December 6, 2006 (Tr. 53). The ALJ held a hearing on October 31, 2008 (Tr. 22). By decision dated December 4, 2008, the ALJ found that Claimant was not entitled to disability insurance benefits as she was not disabled under The Social Security Act from June

1

1, 2005, the alleged onset date, through September 30, 2006, the date last insured (Tr. 21). Claimant's request for review by the Appeals Council was denied on May 19, 2009 (Tr. 1). Thus, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481; *Skarbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Claimant now seeks judicial review of the Agency's final decision pursuant to 42 U.S.C. § 405(g).

## *Background Information*

Claimant was born on March 14, 1948 (Tr. 82). She was 57 years-old at the time of the alleged onset of disability and 60 years-old at the time of the ALJ's decision. *Id.* Claimant received her GED at age 39 in 1987. Claimant was last insured on September 30, 2006 (Tr. 42). At the time of the alleged onset of disability, Claimant was not working (Tr. 184). Her past work experience includes work as an aid and cook in a nursing home, a cook in a deli, a loan officer or clerk, a salad maker and a security guard (Tr. 96, 120). She stopped working on June 1, 2005 due to back pain from a herniated disk and an old injury, as well as hypertension (Tr. 109, 199).

Claimant alleges that she was injured in 1980 while working in the mines (Tr. 109). Claimant went back to work in 1981 for less than a week and was reinjured. *Id.* She claims she has not been able to return back to full time work since that time due to back pain and hypertension. (Tr. 109, 128).

## *Summary of Medical Records*

**A.  Marta Gallegos, MD, Family Practice LLC**

Dr. Gallegos saw Claimant for hypertension on June 23, 2005 (Tr. 154). She noted that Claimant had back surgery in 1981, but at the time of the visit was not experiencing any significant back or joint pain, joint swelling, stiffness or limited range of motion. *Id.* On July 5, 2005, Claimant had a follow-up appointment with Dr. Gallegos. *Id.* She examined Claimant for hypertension and depression. *Id.* Dr. Gallegos prescribed her medication to treat her hypertension and recommended that she take a stress test

and have x-rays done; however, Claimant declined these recommendations because she had no health insurance (Tr. 154).

**B. Crossroads Family Medicine, Dr. Richard Garretson, Dallas W. Lipscomb PA-C**

Dr. Garretson examined Claimant on April 21 and March 21, 2005 to treat a cyst on her right hand (Tr. 180-81). He examined and treated her for hypertension on May 12, 2005 and March 6, 2006 (Tr. 175, 178, 179). She called the doctor to complain about her high blood pressure on June 20, 2005, and was told to double up on her medication and see a physician as soon as possible (Tr. 178). Dr. Garretson also examined Claimant for a severe cough and chest pain on March 27, 2006 (Tr. 174) and diagnosed her with bronchitis on that date.

On an undated patient questionnaire, Claimant reported that she previously had a back x-ray, back surgery, and migraine headaches (Tr. 172). She also claimed to suffer from frequent headaches, frequent cough and shortness of breath (Tr. 173).

**C. Vittal V. Chapa, M.D., S.C., Internal Medicine**

Dr. Chapa evaluated Claimant on August 28, 2006 (Tr. 184). He reviewed the medical records from Dr. Garretson. *Id.* At the time of this examination, Claimant was not working. *Id.* She told Dr. Chapa that her back pain prevents her from sitting and standing for long periods of time, cooking, and doing dishes. *Id.* She complained of having back pain for several years. *Id.* Claimant stated that could not work because of back pain. *Id.* She told Dr. Chapa that she had previously undergone one back surgery, but was not a candidate for surgery even though she had another herniated disk. *Id.* Claimant stated that she took over-the-counter medication to relieve her pain. *Id.*

Dr. Chapa noted that Claimant had a history of high blood pressure and was sometimes short of breath (Tr. 184). She smoked 2-3 packs of cigarettes per day and took lisiropril daily (Tr. 184, 188).

Dr. Chapa's diagnostic impression was that Claimant had (1) chronic back pain, (2) status post lumbar disk surgery, (3) osteoarthritis of the left knee and (4) hypertension (Tr. 186). He found no evidence of nerve root compression or paravertebral muscle spasm. *Id*. Dr. Chapa found that she had no difficulty with ambulation or getting up and down from the examination table (Tr. 185-86). Upon examination, Dr. Chapa found that Claimant had osteoarthritis of the left knee (Tr. 186).

**D. Frederick Harris, MD, Herrin Hospital (Diagnostic Imaging Report)**

On August 28, 2006, Dr. Chapa referred Claimant to Dr. Frederick Harris for x-rays. Dr. Harris took three x-ray views of Claimant's lumbar spine and found mild scoliosis, normal bone density, severe degenerative disc change at l3/4 and l3/5 and moderate degenerative disc change in other areas (Tr. 191). The images did not reveal any spondylolistheses or significant loss of vertebral body height. *Id.*

*The ALJ Hearing*

Claimant appeared for a hearing before the ALJ on October 31, 2008. She was represented by attorney Gary J. Szczeblewski. Vocational expert, Rigley Stewart Jones, was also present (Tr. 24).

Claimant testified that after two unsuccessful attempts, she received her GED at age 39 (Tr. 33). Claimant stated that she stopped working in 2005 because of back pain and high blood pressure (Tr. 26-27). She testified that her back pain prevented her from performing her duties as a kitchen helper at the nursing home because she was not able to do a lot of lifting and was unable to assist cooks with cleaning of the freezers (Tr. 28). When asked by the ALJ if her back pain would preclude her from performing an easier job that is less demanding and does not involve lifting as much weight, Claimant stated that she would be unable to perform her prior position as a loan officer because she cannot stand on her feet for very long. *Id*. She explained that she has not attempted to go back to work since she left the nursing home because of her back pain (Tr. 29).

Claimant's attorney, Mr. Szczeblewski directed attention to Claimant's back injuries. Claimant testified that at the time of the onset of her disability on June 1, 2005, she could not sit or stand for six hour periods (Tr. 29). On a pain scale of 0-10, with 10 being excruciating pain, Claimant rated her pain at 10. *Id*. When Mr. Szczeblewski asked Claimant approximately how many hours she could sit at a time in June 2005, Claimant replied "[p]robably several, 7, 8 hours, sit that long. Oh, no, no, oh, okay, I see what you're saying, oh maybe 15, 20 minutes, yeah I see what you're saying, I'm sorry, I didn't understand you" (Tr. 31). When asked how many total hours per day she could spend standing in June 2005, Claimant replied, "[m]aybe 10, 15 minutes." *Id.* She further testified that the pain in her lower back radiated down her legs and resulted in pain "off and on, most of the time." *Id.* Claimant testified that standing for 15 to 20 minutes would affect the level of pain in her legs. *Id.*

Claimant also testified that in June 2005, she experienced problems with her left knee (Tr. 32). She was not able to articulate what exactly was wrong with her left knee, other than stating that it hurt. *Id.* She commented that the "Social Security" doctor examined her knee but did not tell whether anything was wrong with it. *Id*. Claimant testified that, in the past, she had seen various doctors for problems related to her right knee, back and blood pressure. *Id.*

Mr. Jones, a vocational expert, also testified at the hearing (Tr. 33). He asked Claimant several questions pertaining to her previous work history. *Id.* The ALJ then asked Mr. Jones to consider a hypothetical of a 60 year-old, with a GED, and with the same work experience and limitation as Claimant (Tr. 36). Mr. Jones testified that such a person could still perform Claimant's past work as a loan clerk, security guard and salad maker. *Id*. When asked by Claimant's attorney whether an individual that was limited to sedentary work could perform Claimant's past employment, Mr. Jones explained that the individual could perform the duties of a loan clerk as depicted in the Dictionary of Occupational Titles, but not the job as Claimant performed it. *Id.*

*The ALJ's Decision*

The ALJ rendered a decision denying benefits on December 4, 2008 (Tr. 16). The ALJ evaluated Claimant's application through step four of the sequential analysis and concluded that Claimant was not disabled as defined in The Social Security Act from June 1, 2005, the alleged onset date, through September 30, 2006, the date last insured. The ALJ further concluded that Claimant last met the "insured status requirements" of the Social Security Administration on September 30, 2006 (Tr. 16).

At step one, the ALJ determined that Claimant had not engaged in "substantial gainful activity" during the period from her alleged onset date of June 1, 2005 through her "Date Last Insured" of September 30, 2006. *Id*.

At step two, the ALJ found that Claimant to have the severe impairment of degenerative disc disease (Tr. 17). The ALJ further found that Claimant suffered from hypertension and arthritis in her right knee and osteoarthritis in her left knee, but concluded that they were not severe impairments (Tr. 17-18).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ considered that there was objective medical evidence confirming that Claimant suffers from severe degenerative disc disease at L3-L5. *Id*. However, there was no evidence of compression of a nerve root. *Id*. The ALJ also noted that Claimant's subjective complaints of radiating back pain, numbness or reflex loss was not documented in the medical records. *Id*.

The ALJ found the Claimant to have the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(c) (Tr. 18). In coming to this conclusion, the ALJ must follow a two-step process in which she first determines whether there was an underlying medically determinable physical or mental impairment(s) and if so, she evaluates the intensity, persistence, and

limiting effects of the Claimant's symptoms to determine the extent to which they limit Claimant's ability to do basic work activities (Tr. 18,19). In evaluating the Claimant's residual functional capacity, the ALJ considered the fact that Claimant testified that back pain from her herniated disc and hypertension prevented her from working, lifting and standing for long periods of time and doing simple housework (Tr. 19). She stated that she had great difficulties getting in and out of a bathtub, taking showers and getting dressed, yet in an undated report Claimant claimed that her pain had gotten worse but only took over-the counter medication for pain. *Id*.

The ALJ found inconsistencies between Claimant's statements regarding restrictions in her day-to-day activities and her medically determinable impairments (Tr. 19). The ALJ noted that Claimant's medical records confirm that she suffered from low back pain, but none of the records confirmed radiating pain and numbness, burning or tingling in the feet or loss of bowel movement or bladder control. *Id*. The ALJ commented that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*.

The ALJ considered the opinion evidence from Claimant's October 28, 2006, consultative evaluation by Dr. Vittal V. Chapa. Based on Dr. Chapa's evaluation, and those of his treating sources, the State Agency's September 7, 2006 residual functional capacity assessment was that Claimant could reasonably sustain light work (Tr. 20). The ALJ noted that there was no other medically supportable evidence in the record within Claimant's last date of insured to contradict the residual functional capacity assessment by Dr. Chapa, and Claimant failed to submit additional corroborative statements. *Id*.

At step four, the ALJ found that through the date last insured, Claimant was capable of performing her past relevant work as a loan clerk, security guard or as a salad maker pursuant to 20

C.F.R. § 404.1565 (Tr. 20). The ALJ considered testimony from vocational expert Mr. Jones who testified about Claimant's past relevant work history. Through the date last insured, considering Claimant's age, education, work experience, and residual functional capacity, the ALJ concluded that Claimant could have performed three out of her seven previous jobs as a loan clerk, salad maker, or security guard (Tr. 21). The ALJ considered the Dictionary of Occupational Titles as a framework for decision making and compared Claimant's residual functional capacity with the physical and mental demands of these three jobs. *Id*. The ALJ concluded that Claimant was able to perform these jobs as actually and generally performed. *Id*. The ALJ further noted that even if Claimant had been restricted to no more than a sedentary exertional level, she still could have performed the position of a loan clerk, which according to Mr. Jones would normally be performed at the sedentary exertional level. *Id*.

In conclusion, the ALJ found that Claimant: 1) was not disabled, as defined by The Social Security Act, at any time from June 1, 2005, the alleged onset date, through September 30, 2006, the date last insured; 2) was not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured; 3) had a the severe impairment of degenerative disc disease; 4) did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; 5) through the date last insured, had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 16-21); and (6) through the date last insured, was capable of performing her past relevant work as a loan clerk, security guard and salad maker (Tr. 16-21).

## CONCLUSIONS OF LAW

### *Social Security Guidelines*

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities

which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *Id*.

If the Commissioner finds that the claimant is disabled or not disabled at any step, she may make her determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, part 404. However, if the impairment is not so listed, the Commissioner assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. *Id*.

*Standard of Review*

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla" of proof.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  *Richardson*, 402 U.S. at 401.  The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  An ALJ need not address every objective finding in the record for his judgment to be supported by substantial evidence. The ALJ "need only build a bridge from the evidence to his conclusion." *Sims v. Barnhart,* 309 F.3d 424, 429 (7th Cir. 2002) (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)).  The Seventh Circuit urges "a commonsensical reading" of a claimant's medical history, "rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999).

The deferential substantial-evidence standard applies, *inter alia*, to findings of the claimant's credibility.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) ("The ALJ's credibility determinations generally will not be overturned unless they were patently wrong.").  An ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (stating that "an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws").

Because the Commissioner is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id.*  However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or a "serious mistake or

omission," reversal is required unless the Court is satisfied that no reasonable trier if fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### *Claimant's Arguments*

Claimant argues that 1) the ALJ erred in not giving weight to Claimant's testimony as to her severe pain; 2) the ALJ erred in finding that Claimant could perform her past work; and 3) the ALJ erred in not applying the medical vocational guidelines.

**A. Claimant's Testimony**

Claimant contends that the ALJ improperly evaluated her testimony regarding her disabling pain. Specifically, Claimant argues that the ALJ gave controlling weight to the residual functional capacity completed by the State Agency, which made reference only to the fact that Claimant suffered from pain, rather than the severity of her pain.

As stated above, the Court must evaluate the ALJ's findings of the Claimant's credibility under a highly deferential standard. *Zurawski*, 245 F.3d at 887. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." S.S.R. 96-7p.

According to the Seventh Circuit,

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that are related to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

*Zurawski*, 245 F.3d at 887(quoting *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994)). The *Zurawski* court, however, clarified that "where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations." *Zurawski,* 245 F.3d at 887-88.

The ALJ's determination that Claimant's claims of pain were not entirely credible is based upon substantial evidence on the record as a whole. The ALJ analyzed Claimant's testimony regarding her "excruciating pain" and back pain that "radiates down her legs." The ALJ noted the Claimant's statements that her pain prevents her from sitting or standing 6 out of an 8 hour day. The ALJ reported Claimant's statements that "her back hurts all the time, and sometimes worse, if she is standing or sitting for long periods" (Tr. 19).

Regarding Claimant's daily activities, the ALJ noted that for Claimant simple housework is a problem because of her back pain. She needs help using simple kitchen tools, opening jars, and carrying grocery bags and a basket of laundry, and getting in and out of the bathtub. Running the vacuum cleaner was "almost impossible" for Claimant because she tires very quickly. The ALJ noted that prior to the date last insured, Claimant's only medication was over-the-counter Aleve (Tr. 19).

The ALJ found that Claimant's degenerative disc disease could reasonably be expected to cause her low back pain, but her subjective complaints regarding the intensity, persistence and limiting effects of her low back pain were not consistent with the residual functional capacity assessment. The record established that Claimant testified to a higher level of pain and a lower level of functionality than she reported to her doctors. The ALJ then summarized the medical records that belie Claimant's reports of pain. Claimant's medical records from June 2005 through September 30, 2006, however, reflect that she did suffer from lower back pain but nowhere was there evidence that Claimant experienced radiating

pain or numbness, burning or tingling of the feet or loss of bowel or bladder control. The ALJ pointed to an x-ray which confirmed disc degeneration at multiple levels of the lumbar spine, but did not confirm involvement of a nerve root. The ALJ also summarized the consultative evaluation by Dr. Chapa and the State Agency's residual functional capacity assessment (Tr. 19, 20).

Considering the deferential standard by which the Court is to review an ALJ's credibility finding, the Court believes that the ALJ's thorough discussion of the medical records, and of the other factors related to Claimant's pain was adequate to support her credibility finding. Thus, the undersigned recommends that the ALJ's opinion as to Claimant's credibility is based upon substantial evidence on the record as a whole.

### B. Reliance on Consultative Review and State Agency Report

Claimant also contends that the ALJ placed too much emphasis on the consultative examination completed by Dr. Chapa on November 15, 2006 and the functional capacity assessment done by the State Agency on September 7, 2006, which found that Claimant could sustain light work. Claimant argues that Dr. Chapa's consultative review did not contain an analysis of an x-ray of Claimant's lumbar spine which, Claimant contends, would have indicated whether she experienced pain with her full range of motion. Claimant also argues that the ALJ should have ordered a second consultative evaluation to determine if Claimant suffered from an impairment that resulted in severe pain which would have prevented her from performing her past jobs as a salad maker, loan clerk or security guard.

The ALJ's functional capacity determination was consistent with the opinions of Dr. Chapa and the State Agency physicians, and the ALJ is entitled to rely upon their opinions. 20 C.F.R. § 404.1527(f)(2)(i); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Furthermore, the ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" her reasoning so as to "make a bridge" between the evidence and her conclusions. *Id*. At 371. Where

the ALJ does not reflect any countervailing evidence, she need not articulate her reasons for accepting medical opinions in the record. *Scheck v. Barnhart*, 357 F.3d 697, 700-701 (7th Cir. 2004). The ultimate question is whether the ALJ's decision is sufficiently specific to facilitate a meaningful review. *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003). The ALJ's residual functional capacity determination was adequately articulated. The ALJ expressly adopted the opinions of Dr. Chapa and the State Agency physicians, who all opined, based on the records before them, that Claimant could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

Furthermore, an ALJ is not obligated to order a second consultative examination when there is no objective evidence in the record to support such an examination. *Clayborne v. Astrue*, No. 06 C 6380, 2007 WL 6123191, at *4 (N.D. Ill. Nov. 9, 2007)(citing *Carroll v. Barnhart*, 291 F.Supp.2d 783, 795 (N.D. Ill. 2003); *Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991)). A second consultative evaluation would only demonstrate Claimant's residual functional capacity two years after her date last insured. Given the facts of this case, there is no basis for requiring the ALJ to order a second consultative evaluation. Thus, the undersigned finds the ALJ's discussion of the evidence evaluated in determining Plaintiff's functional capacity assessment is based on substantial evidence on the record as a whole.

### C. Claimant's Past Relevant Work

Claimant contends that the ALJ failed to determine whether her previous job as a loan clerk constituted substantial gainful activity before finding that she was able to perform her past relevant work. Under step four, if the claimant can still perform the claimant's past relevant work given her residual functional capacity assessment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4). A claimant will be found to be "not disabled" if it is determined that: 1) the claimant has the residual functional capacity to perform "the actual functional demands and job duties of a particular past relevant job"; or 2) the claimant has the capacity to perform the "functional demands and job duties of the occupation as generally required by employers in the national economy." SSR 82-61.

Past relevant work is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn how to do it." 20. C.F.R. §§ 404.1560(b), 404.1565(a). Past relevant work must first rise to the level of substantial gainful activity. *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987). To be considered substantial gainful activity, work must meet certain earnings and length requirements. According to 20 C.F.R. § 404.1574(a)-(b), if an individual's earnings fall below a certain level, his work does not constitute substantial gainful activity. For example, the amount of average monthly earnings that is ordinarily indicative of substantial gainful activity for the year of 2003 is $800. 20 C.F.R. § 404.1574(b)(2). For the year 2004, that amount is $810. *Id.* Additionally, the regulations also have guidelines for unsuccessful work attempts. 20. C.F.R. §§ 404.1560(b), 404.1565(a). Unsuccessful work attempts are defined as instances where the claimant has worked 6 months or less and his or her impairment has forced them to stop working or reduce the amount of work so that his or her earnings fall below the substantial gainful activity earnings level. 20 C.F.R. § 404.1574(c). This will "ordinarily" demonstrate that the job was not substantial gainful

activity. 20 C.F.R. § 404.1574(c)(1). Similarly, if a claimant works for 3 months or less, the Commissioner considers the work to be an unsuccessful work attempt if the individual stopped working or reduced their work and earnings below the substantial gainful activity earnings level because of their impairment. 20 C.F.R. § 404.1574(c)(3). Additionally, if the claimant worked between 3 and 6 months, the Commissioner will consider the work to be an unsuccessful work attempt if "it ended or was reduced below substantial gainful activity earnings level, within 6 months because of [plaintiff's] impairment . . ." 20 C.F.R. § 404.1574(c)(4).

In this case, the ALJ found that Claimant was qualified to perform her past jobs at a salad maker, security guard and loan officer. The ALJ, however, did not address whether Claimant's earnings were sufficient to warrant a finding that these positions constituted substantial gainful activity. As best the undersigned can tell, the ALJ simply accepted the vocational expert's opinion that Claimant can perform these jobs without asking whether they constitute substantial gainful activity.

Even if the ALJ had made such an analysis, the undersigned is of the opinion that she could not have reasonably concluded, based on substantial evidence in the record, that Claimant's past duties as a salad maker, loan clerk and security officer constitute substantial gainful activity. After a thorough review of the record, it is unclear what length of time Claimant performed each of these positions and how much she earned in total. Moreover, the ALJ failed to inquire about these details at the hearing and mentioned nothing at all in her decision. Thus, the undersign concludes that the ALJ failed to develop the record regarding Claimant's past relevant work. Therefore, the ALJ's finding that Claimant could perform her past relevant work is not supported by substantial evidence.

**Medical-Vocational Guidelines**

Claimant argues that the ALJ erred in not applying the Medical-Vocational Guidelines. The Medical-Vocational Guidelines are used to classify claimants as disabled or not disabled, and are not

used if a determination is reached at an earlier stage of the evaluation process.  20 C.F.R. § 220.134(b).  The Guidelines are applied at the fifth step, that is, after a claimant has shown an inability to perform her prior relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981).  In this case, the ALJ completed her evaluation at step four when she concluded, *albeit* erroneously, that Claimant was capable of performing her past relevant work.  Thus, it would have been premature for the ALJ to apply the Medical-Vocational Guidelines at step 4 of the evaluation.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the case be **REMANDED** to the Commissioner for further proceedings to develop the record regarding Claimant's previous relevant work history.


**Dated:  August 31, 2010**                                         *Donald G. Wilkerson*
                                                                   **Donald G. Wilkerson**
                                                                   **United States Magistrate Judge**